IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROBERT KOSTER,                                   Civ No. 06-6097-AA

    Plaintiff,                                  OPINION AND ORDER

v.

LANE REGIONAL AIR POLLUTION
AUTHORITY, an Intergovernmental
Agency and Instrumentality of
the State of Oregon, and BRIAN
L. JEMMISON,

    Defendants.

---

David C. Force
P.O. Box 10972
Eugene, Oregon 97440
    Attorney for plaintiff

Karen O'Kasey
Sean M. Bannon
HOFFMAN, HART & WAGNER, LLP
Twentieth Floor
1000 S.W. Broadway
Portland, Oregon 97205
    Attorneys for defendant

1   - OPINION AND ORDER

AIKEN, Judge:

Plaintiff Robert Koster filed this action against defendants Lane Regional Air Pollution Authority and Brian Jennison, alleging three claims: (1) statutory whistleblowing pursuant to Or. Rev. Stat. § 659A.203, (2) First Amendment retaliation pursuant to 42 U.S.C. § 1983, and (3) common law wrongful discharge. Defendants now move for summary judgment on each of plaintiff's claims. Defendants' motion is granted.

## I. FACTUAL BACKGROUND

Plaintiff was employed by the Lane Regional Air Pollution Authority (LRAPA) from 1999 until he was discharged by his supervisor and the Director of LRAPA, defendant Brian Jennison, on November 8, 2004.

In 2002, plaintiff became concerned that some LRAPA employees were representing themselves as engineers when they were not appropriately licensed to do so. Affidavit of Sean M. Bannon (Bannon Aff.), Ex. A, pp. 2-3 (Koster Depo. pp. 54-55). The same year, plaintiff asked the Oregon Attorney General's office for an opinion as to whether those employees were improperly representing themselves as licensed engineers. Id.

Plaintiff also became concerned that Jennison and Sharon Banks, another LRAPA employee, were using their positions at LRAPA for personal enrichment. Specifically, plaintiff believed that Jennison and Banks were misusing permitting fees earmarked for air

2   - OPINION AND ORDER

quality permit administration, through the purchase of a laptop computer for Jennison's personal use and the funding of an emissions program started and promoted by Banks. See Declaration of Robert Koster. Plaintiff also claims that he attended a meeting where Banks asked LRAPA staff to inappropriately charge against a grant program that remained excessively funded. Bannon Aff., Ex. A, p. 21 (Koster Depo. p. 105). However, plaintiff admits he had no actual evidence that Banks or Jennison were misusing or misappropriating funds. Id. Ex. A, p. 30 (Koster Depo. p. 122).

In May 2004, plaintiff showed John Becker and John Ruscigno, regional Oregon Department of Environmental Quality (DEQ) managers, a grievance letter he had written that raised the engineer licensing issue. Bannon Aff., Ex. A, pp. 5-6, 45-46 (Koster Depo. pp. 67, 69, Ex. 101). Plaintiff asked Ruscigno to review the letter because Ruscigno had past experience with LRAPA as its interim-director. In his letter, plaintiff also complained about being reassigned from operations manager to another position with no job description and asserted that LRAPA employees were not treated professionally or fairly. After showing the letter to Becker and Ruscigno, plaintiff gave it to Jennison. Jennison responded to plaintiff's grievance in writing, and plaintiff did not pursue his grievance further. Bannon Aff., Ex. B, pp. 3-5 (Jennison Depo. p. 34-36).

On November 2, 2004, Banks requested plaintiff's attendance at

3 - OPINION AND ORDER

an emissions inventory meeting, and plaintiff responded that he had "attended more than enough meetings of the sort you describe and for which you suggest my attendance is mandatory," and indicated that he would not attend. Bannon Aff. Ex. A, pp. 49-50 (Koster Depo., Ex. 102).

The same day, Jennison also asked plaintiff, via email, to attend the meeting as requested by Banks. Id. p. 49. Plaintiff responded that Jennison would have to show him a new organizational chart and job description that proved plaintiff was required to attend the meeting. In his email response, plaintiff also told Jennison that he "get[s] nothing out of talking with you regularly or otherwise," accused Jennison of having a "temper tantrum," and asked Jennison, "By the way, how are you doing in your anger management counseling?" Id. pp. 47-48. Plaintiff also informed Jennison that "there's no plan or direction to define [LRAPA's] work and you insist that everybody gets financially rewarded whether they are productive or not." Id. at p. 48. Plaintiff admits that the email to Jennison was sarcastic.

On November 8, 2004, Jennison informed plaintiff he was terminated. According to defendants, plaintiff's insubordinate tone in the above email exchange, in addition to his deliberate absence from two required meetings, were the primary reasons for plaintiff's termination from LRAPA.

On April 11, 2006, plaintiff filed this action.

## II. STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The materiality of a fact is determined by the substantive law on the issue. T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The authenticity of a dispute is determined by whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324.

Special rules of construction apply to evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Elec., 809 F.2d at 630.

## III. DISCUSSION

Plaintiff alleges that defendants terminated him for raising the engineer licensing issue with the Attorney General's office and DEQ personnel and for complaining about Jennison's and Banks's alleged misuse of permitting fees. Plaintiff argues that defendants' conduct violated his rights under Oregon's whistleblower statute and the First Amendment of the United States Constitution and constitutes wrongful discharge.

Defendants move for summary judgment against plaintiff's statutory whistleblowing claim on grounds that it is time-barred. The statute of limitations for a statutory whistleblowing claim is one year from the date of the allegedly wrongful discharge. Or. Rev. Stat § 659A.857(1). Defendants argue that the limitations period for plaintiff's claim began to run when he was discharged on November 8, 2004, and that his complaint was filed more than one year after his termination. Plaintiff maintains that the limitation period did not begin until he received the written denial of his discharge grievance on April 19, 2005.

The controlling date is that of the adverse employment action, and the Oregon Supreme Court has explained that the statute of limitations period commences with the occurrence of the unlawful conduct itself. Huff v. Great Western Seed Co., 322 Or. 457, 464-65, 909 P.2d 858 (1996). Here, Jennison informed plaintiff that he was being terminated on November 8, 2004. That is the date of

defendants' allegedly unlawful conduct and when the limitations period commenced. Huff, 322 Or. at 465. Plaintiff did not file this action until April 11, 2006, beyond the one-year limitations period allowed under § 659A.875(1). Therefore, plaintiff's whistleblowing claim is time-barred.

Defendants also move for summary judgment against plaintiff's constitutional retaliation claim. To establish a First Amendment retaliation claim under 42 U.S.C. § 1983, a plaintiff must prove: (1) that he engaged in speech that was of public concern; (2) that the employer took an adverse employment action against him; and (3) that the protected speech was a substantial or motivating factor for the alleged adverse action. Thomas v. City of Beaverton, 379 F.3d 802, 808 (9th Cir. 2004). If the plaintiff can establish a prima facie claim, the burden shifts to the employer to demonstrate either that "the employer's legitimate administrative interests outweigh the employee's First Amendment rights" or that "the employer would have reached the same decision even in the absence of the [employee's] protected conduct." Id. (internal citation and quotation marks omitted).

The parties agree that plaintiff suffered an adverse employment action through his termination, and that Jennison, plaintiff's supervisor, made the decision to terminate him. However, defendants argue that plaintiff cannot establish a prima facie case of retaliation, because the first and third elements are

<br>

7   - OPINION AND ORDER

lacking. Defendants assert that plaintiff was not engaged in protected activity and that no causal link exists between his alleged whistleblowing activity and Jennison's decision to terminate his employment with LRAPA. Defendants further emphasize plaintiff's insubordination as a legitimate, non-retaliatory reason for his termination.

I agree that it is questionable whether plaintiff's complaints constitute protected speech of public concern rather than unprotected workplace grievances. See Garcetti v. Ceballos, 547 U.S. 410, 423-24 (2006); Connick v. Myers, 461 U.S. 138, 147 (1983); Havekost v. U.S. Dep't of Navy, 925 F.2d 316, 318-19 (9th Cir. 1991) (personnel disputes and "workplace grievances" are not matters of public concern entitled to First Amendment protection). Regardless, even if plaintiff engaged in protected speech, he fails to establish that his complaints about unlicensed engineers and Jennison's and Banks's misuse of funds were substantial or motivating factors for his discharge. Coszalter v. City of Salem, 320 F.3d 968, 973, 977 (9th Cir. 2003).

Although Jennison subsequently learned that plaintiff requested a legal opinion from the Attorney General's office about LRAPA's engineer licensing, plaintiff's request is too remote in time to create a question of fact as to causation, given that plaintiff requested the legal opinion in 2002, two years prior to his termination and plaintiff presents no other evidence of

retaliatory motive. Bannon Aff., Ex. A, p. 3 (Koster Depo. p. 5); Porter v. Cal. Dep't of Corr., 419 F.3d 885, 895 (9th Cir. 2005); Coszalter, 329 F.3d at 978. Further, plaintiff presents no evidence that Jennison knew plaintiff discussed the engineering licensing issue with Becker and Ruscigno or that plaintiff showed them his grievance letter.

Likewise, plaintiff fails to present evidence that he complained about Jennison's and Banks's alleged misuse of funds or that Jennison knew about such complaints. Indeed, plaintiff presents no evidence that he complained or reported to anyone in authority that LRAPA management misappropriated funds or that LRAPA had violated the law. Bannon Aff., Ex. A, pp. 21-22, 39 (Koster Depo. pp. 105-06, 147). In fact, plaintiff testified at his deposition that he did not report the misuse of permitting fees, "because I, again, didn't have any real evidence." Bannon Aff., Ex. A, p. 30 (Koster Depo. p. 122).

Notably, plaintiff does not allege or present evidence that he spoke with members of the LRAPA board concerning what he thought were issues or problems in the agency – the only communications he had with the board were evaluations of Jennison's performance. See Bannon Aff., Ex. A, p. 9 (Koster Depo. p. 77). Further, plaintiff never asserted to the LRAPA board, during his discharge hearing or subsequent appeal, that he was being discharged for whistleblowing. Id. Ex. A, pp. 40-43 (Koster Depo. pp. 151-153).

Instead, plaintiff asserts that he discussed LRAPA's accountability for permitting fees with Russ Ayers, a personal friend who was an environmental manager for the Weyerhaeuser Springfield pulp mill and a member of LRAPA's advisory committee. However, plaintiff presents no evidence that he and Ayers discussed LRAPA's alleged misuse of permitting fees or the engineering licensing issue. Bannon Aff., Ex. A, pp. 10-15 (Koster Depo. pp. 80, 84-90). Likewise, plaintiff presents no evidence that Ayers ever spoke to Jennison about his conversations with plaintiff. Id.

Plaintiff also claims to have discussed LRAPA issues and permitting fees with Tom Wood, an attorney for one of LRAPA's permit holders. However, plaintiff could not recall the specific topic of conversation between he and Wood, and no evidence suggests that Wood informed Jennison about plaintiff's concerns. Bannon Aff., Ex. A, pp. 15-18 (Koster Depo. pp. 90, 92, 98, 100).

Plaintiff also apparently spoke with Peter Brewer, LRAPA's eastern regional office air quality manager, about engineer certification and salary proposals for two LRAPA employees, but plaintiff has no evidence that Brewer spoke to Jennison. Id. Ex. A, p. 20 (Koster Depo. p. 103).

Finally, plaintiff states that he raised LRAPA's use of permit fees with Paul Koprowski of the Environmental Protection Agency. However, plaintiff could not recall what he and Koprowski specifically discussed, and plaintiff presents no evidence that

Koprowski spoke with Jennings. Bannon Aff., Ex. A, pp. 23-24 (Koster Depo. pp. 108-09).

In sum, there simply is no evidence in the record to suggest that Jennison was aware of plaintiff's complaints about LRAPA's engineers or its use of funds.[1] Because plaintiff fails to show that Jennison knew of plaintiff's statements to Ayers, Wood, Brewer, or Koprowski, no reasonable fact-finder could conclude that these statements were motivating factors in Jennison's decision to terminate plaintiff. Accordingly, I find that plaintiff fails establish that he suffered an adverse employment action as a result of his complaints. Regardless, defendants proffer a legitimate, non-retaliatory reason for plaintiff's termination, and plaintiff presents no evidence of pretext. Coszalter, 329 F.3d at 978. Therefore, plaintiff's First Amendment retaliation claim fails as a matter of law.

Finally, defendants move for summary judgment on plaintiff's wrongful discharge claim. As with his First Amendment retaliation claim, plaintiff must show that his protected activity was a substantial or motivating factor for his discharge. Estes v. Lewis & Clark College, 152 Or. App. 372, 381, 954 P.2d 792 (1998). For

---

[1] Plaintiff also requests that disposition of defendant's Motion for Summary Judgment be postponed until he conducts further discovery, specifically the renewed deposition of Sharon Banks. However, plaintiff has already deposed Banks and presents no basis to reopen discovery, given that the information plaintiff seeks is not relevant to causation. Therefore, plaintiff's request is denied.

the reasons discussed above, plaintiff presents no evidence to support such a conclusion. Therefore, plaintiff's claim for wrongful discharge fails as a matter of law.

## CONCLUSION

Defendants' Motion for Summary Judgment (doc. 29) is GRANTED, and Defendant's Motion to Strike (doc. 48) is DENIED as moot. IT IS SO ORDERED.

Dated this 25th day of March, 2008.

*/s/ Ann Aiken*
Ann Aiken
United States District Judge